UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| THOMAS M. HOGAN and RU HOGAN,<br><br>            Plaintiffs,<br><br>     v.<br><br>CENTRAL LOAN ADMINISTRATION dba CENLAR FSB; CITIBANK, N.A.; and DOES 1 through 20, inclusive,<br><br>            Defendants. | No. 2:22-cv-00039 WBS AC<br><br>MEMORANDUM AND ORDER RE: DEFENDANT CITIBANK'S MOTION TO DISMISS AND DEFENDANT CENLAR'S MOTIONS TO DISMISS AND TO STRIKE PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT |

----oo0oo----

     Plaintiffs brought this action against Citibank, N.A. ("Citibank") and Central Loan Administration, dba Cenlar FSB ("Cenlar") alleging (1) breach of contract; (2) negligence; and (3) negligent misrepresentation.  (First Am. Compl. ("FAC") (Docket No. 12).)  Before the court are (1) Citibank's motion to dismiss the FAC (Docket No. 16); (2) Cenlar's motion to dismiss the FAC (Docket No. 17); and (3) Cenlar's motion to strike

1

portions of the FAC (Docket No. 19).[1]

I.   Factual Background

Plaintiffs are co-owners of a property in Placer County subject to a loan.  (FAC ¶¶ 7-8.)  Citibank is the lender and Cenlar is the loan servicer.  (Id. ¶¶ 14, 16.)  Plaintiffs allege that in April 2019, plaintiffs were advised by a Citibank personal banker to pay their monthly mortgage in two payments and that their second payment would not be deemed late as long as it was received by Cenlar before the 15-day grace period ended. (Id. ¶ 14.)  Plaintiffs changed their monthly payment into bi-monthly payments and allege the total amount of the two payments per month exceeded the minimum monthly payment.  (Id. ¶ 15.)

Plaintiffs noticed that Cenlar was applying early payments to the loan principal and rejecting the second payments as partial payments.  (Id. ¶ 16.)  On September 22, 2019, Plaintiffs met with Gabriella Peter, the Financial Center Operations Manager at a Sacramento branch of Citibank.  (Id. ¶ 17.)  Peter connected plaintiffs with a Cenlar representative, whose name and position is unknown.  (Id.)  Plaintiffs allege that during this phone call, Cenlar, through its representative, agreed to the following:

> "A.  Cenlar agreed to recharacterize all past payments incorrectly applied to principal and apply them to payments on the loan, to remove all negative credit reporting and waive late fees.

---

[1] Defendant Cenlar submitted a request for judicial notice of the promissory note and deed of trust associated with plaintiffs' loan.  (Docket No. 18.)  The court does not rely on any of the items in the request in deciding Cenlar's motion, and the items are already attached to plaintiffs' FAC. Therefore, the request is DENIED AS MOOT.

> B. Plaintiffs agreed to immediately pay in excess of $4,400 for rejected payments along with a 'telephone convenience fee' to bring the account up to date.
>
> C. With the application of payments applied to principal now reset as payments on the loan, Plaintiff[s'] account would be paid current until February 1, 2020."

(Id.)

Plaintiffs paid the $4,400 and then reset their payment schedule to once per month. (Id. ¶ 18.) In February 2020, plaintiffs applied for a loan, through another lender, to close escrow on the purchase of a new home. (Id. ¶ 19.) Plaintiffs' loan was rejected due to Cenlar continuing to "misapply payments and report late payments to credit." (Id.) Plaintiffs allege that Cenlar continued to report the account as "past due" and "posted monthly negative and derogatory credit on Plaintiffs' credit reports." (Id.) Despite plaintiffs submitting disputes to Cenlar, plaintiffs allege Cenlar continues "to report negative credit and multiple missed mortgage payments." (Id. ¶ 20.)

II. Citibank's Motion to Dismiss

Plaintiffs' breach of contract, negligence, and negligent misrepresentation claims against Citibank are based on the September 22, 2019 phone call in which Cenlar agreed to recharacterize past payments, remove negative credit, and waive late fees. Plaintiffs' breach of contract claim relies solely on defendants' failure to "perform pursuant to the terms of the September 22, 2019 oral agreement." (Id. ¶ 27.) Plaintiffs' negligence claim alleges that defendants breached their duty of care "by failing to honor the terms of the September 22, 2019

3

1 oral agreement." (Id. ¶ 33.)  The alleged misrepresentations in
2 plaintiffs' negligent misrepresentation claim are also based on
3 the September 22, 2019 phone call.  (Id. ¶ 41.)

4 　　　　The FAC does not "contain sufficient factual matter,
5 accepted as true" to plausibly allege that Citibank agreed to
6 anything during the September 22, 2019 phone call.  See Ashcroft
7 v. Iqbal, 556 U.S. 662, 678 (2009).  The FAC states that
8 Citibank's employee "assisted with contacting a Cenlar
9 representative," (FAC ¶ 17), but does not contain any factual
10 allegations demonstrating what the Citibank representative said
11 or did during or after the call that would show Citibank's
12 involvement in the purported September 22, 2019 agreement.

13 　　　　The FAC does not contain any factual allegations
14 pertaining to plaintiffs' theory, identified in plaintiffs'
15 opposition, that Citibank ratified the alleged September 22, 2019
16 agreement.  (Pls.' Opp'n to Citibank at 4-5 (Docket No. 23).)
17 Plaintiffs vaguely allege that Citibank acted in conflict with
18 the terms of the alleged September 22, 2019 agreement, but
19 liability for those actions cannot be assessed without any
20 factual allegations showing that Citibank was a party to the
21 alleged September 22, 2019 agreement, was aware of it, or made
22 any representations during the call.  (See, e.g., FAC ¶¶ 27, 33)

23 　　　　Accordingly, Citibank's motion to dismiss must be
24 granted.

25 III. Cenlar's Motion to Dismiss
26 　　　A.　Breach of Contract

27 　　　　Cenlar argues the alleged oral agreement on September
28 22, 2019 was an attempt to modify the mortgage loan by changing

4

1    the process for loan payments, and therefore falls within the
2    statute of frauds.  (Cenlar's Mot. at 7.)  Any agreement
3    concerning interest in real property is governed by the statute
4    of frauds and must be in writing and signed by the party against
5    whom the agreement is enforced.  Cal. Civ. Code § 1624.  Because
6    a mortgage loan is subject to the statute of frauds, any
7    modification to its terms is also subject to the statute of
8    frauds.  See Secrest v. Sec. Nat'l Mortg. Loan Tr. 2002-2, 167
9    Cal. App. 4th 544, 553-54 (4th Dist. 2008); see also, e.g., Khan
10   v. CitiMortgage, Inc., 975 F. Supp. 2d 1127, 1137 (E.D. Cal.
11   Sept. 20, 2013) (O'Neill, J.)(citing Secrest for the same
12   proposition); Basham v. Pac. Funding Grp., No. 2:10-cv-96 WBS
13   GGH, 2010 WL 2902368, at *6 (E.D. Cal. July 22, 2010) (same).
14              Even assuming the oral agreement was covered by the
15   statute of frauds, the FAC alleges sufficient facts to support
16   plaintiffs' claim that Cenlar is estopped from asserting the
17   statute of frauds as a defense.  Under California law, "where
18   assertion of the statute of frauds would cause unconscionable
19   injury, part performance allows specific enforcement of a
20   contract that lacks the requisite writing."  In Re Marriage of
21   Benson, 36 Cal. 4th 1096, 1108 (2005).  "[T]o constitute part
22   performance, the relevant acts must either unequivocally refer to
23   the contract . . . or clearly relate to its terms," which
24   "satisfies the evidentiary function of the statute of frauds."
25   Id. at 1109 (citations and quotations omitted).
26              Here, plaintiffs sufficiently plead part performance
27   and unconscionable injury.  Plaintiffs allege they paid the
28   agreed upon $4,400 and changed their payment schedule to once a

1   month in accordance with the agreement. (FAC ¶¶ 18, 19.)
2   Further, plaintiffs' allegation that Cenlar is still making
3   negative credit reports about plaintiffs, two years after the
4   purported agreement to stop, sufficiently establishes
5   unconscionable injury. (Id. ¶ 20.)  Due to ongoing negative
6   credit reports, plaintiffs allege they were unable to obtain
7   approval for another loan. (Id. ¶ 29.)
8         Plaintiffs sufficiently allege facts supporting each
9   element of a contract claim under California law, and Cenlar does
10  not argue otherwise.  See First Com. Mortg. Co. v. Reece, 89 Cal.
11  App. 4th 731, 745 (2d Dist. 2001) (listing elements for breach of
12  contract claim).  Plaintiffs allege that the September 22, 2019
13  agreement constitutes a contract, and that plaintiffs performed
14  their part of the contract by making the necessary payments and
15  resetting their payment schedule.  (FAC ¶¶ 22, 26.)  Plaintiffs
16  allege Cenlar was in breach of the contract when it continued to
17  misapply payments, report negative credit, "threaten other legal
18  actions," and "engage[ ] in ongoing and constant harassment of
19  plaintiffs."  (Id. ¶¶ 27-28.)  Plaintiffs also sufficiently plead
20  resulting harm by alleging denial of another loan due to negative
21  credit.  (Id. ¶ 29.)
22        Accordingly, Cenlar's motion to dismiss plaintiffs'
23  breach of contract claim will be denied.
24      B.   Negligence
25        To prove a cause of action for negligence, plaintiff
26  must show a legal duty owed to plaintiff by the defendant.
27  Mendoza v. City of Los Angeles, 66 Cal. App. 4th 1333, 1339 (2d
28  Dist. 1998) (citation omitted).  A lender or servicer owes no

duty of care in its "customary role in arms-length lending and servicing." Id. at 635.  Sheen v. Wells Fargo Bank, N.A., 12 Cal. 5th 905, 505 P.3d 625, 635 (2022).[2]  Here, although plaintiffs allege Cenlar owed them a "duty of care under the circumstances" (FAC ¶ 32), plaintiffs do not sufficiently allege what the "circumstances" are beyond those of Cenlar's customary role in lending and servicing that call for a duty or even what Cenlar had a duty to do.[3]

Moreover, even if plaintiffs sufficiently alleged the duty element, the allegations do not overcome the economic loss doctrine.  Generally, "there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage."  Sheen, 505

---

[2]  Prior to Sheen, courts applied a factor test from Biakanja v. Irving, 49 Cal. 2d 647, 650 (1958) to determine if the situation fell outside the general rule cited above. However, the California Supreme Court clarified in Sheen that the factors in Biakanja only apply "when the plaintiff is a third party not in privity with the defendant." Sheen, 505 P.3d at 642.  Here, it is alleged that plaintiffs and Cenlar were in contractual privity pursuant to the initial loan agreement and the purported September 22, 2019 agreement.  Therefore, the court does not apply the factors under Biakanja.

[3]  See Chie v. Citigroup, Inc., No. 20-cv-07611, 2021 WL 633868, at *5 (N.D. Cal. Feb. 18, 2021) (holding that no duty of care existed based on allegations that defendant had a duty to "account for and credit or refund funds that were sent to" defendant because defendant was "acting in its capacity as a conventional lender"); Gosal v. Wells Fargo Bank, N.A., No. 2:18-cv-00908 JAM AC (PS), 2018 WL 2984875, at *5 (E.D. Cal. June 14, 2018) (holding that plaintiff failed to sufficiently allege the duty element because defendant was acting in its capacity as a lending institution when "failing to properly and accurately credit payments, preparing and filing false documents, and foreclosing").

7

1 P.3d at 632. "[T]he rule functions to bar claims in negligence
2 for pure economic losses in deference to a contract between
3 litigating parties." Id.  "[S]uch claims are barred when they
4 arise from -- or are not independent of -- the parties'
5 underlying contracts." Id.  Plaintiffs' allegations are
6 insufficient to state a negligence claim independent of the
7 parties' contractual duties.
8      Accordingly, Cenlar's motion to dismiss plaintiff's
9 negligence claim will be granted.
10    C.  Negligent Misrepresentation
11      "The elements of negligent misrepresentation under
12 California law are: '(1) the misrepresentation of a past or
13 existing material fact, (2) without reasonable ground for
14 believing it to be true, (3) with intent to induce another's
15 reliance on the fact misrepresented, (4) justifiable reliance on
16 the misrepresentation, and (5) resulting damage.'" Argueta v.
17 J.P. Morgan Chase, No. 2:11-cv-441 WBS GGH, 2011 WL 6012323, at
18 *4 (E.D. Cal. Dec. 1, 2011) (citing Apollo Cap. Fund, LLC v. Roth
19 Cap. Partners, LLC, 158 Cal. App. 4th 226, 243 (2d Dist. 2007)).
20      Plaintiffs fail to sufficiently allege a claim for
21 negligent misrepresentation that is distinct from their claim for
22 breach of contract.  Plaintiffs only allege "misrepresentations"
23 that are promises Cenlar made as part of the purported
24 contractual agreement.  (FAC ¶ 41.)  These are not
25 misrepresentations of a "past or existing material fact," rather
26 they are allegedly false promises of future action, which cannot
27 form the basis for a negligent misrepresentation claim.  See UMG
28 Recordings, Inc. v. Glob. Eagle Ent., Inc., No. CV 14-3466 MMM,

2015 WL 12746208, at *18 (C.D. Cal. Oct. 20, 2015) (citing Tarmann v. State Farm Mut. Auto Ins. Co., 2 Cal. App. 4th 153, 158 (6th Dist. 1991)) ("California law does not recognize a claim for negligent misrepresentation on the basis of a false promise").  Therefore, Cenlar's motion to dismiss plaintiffs' negligent misrepresentation claim will be granted.

        D.    <u>Fair Credit Reporting Act Preemption</u>

Cenlar argues that to the extent that plaintiffs' remaining breach of contract claim is based on inaccurate reporting, it is preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681.  The FCRA provides that "[n]o requirement or prohibition may be imposed under laws of any state . . . with respect to any subject matter regulated under . . . section 1681s-2 . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies."  15 U.S.C. § 1681t(b)(1)(F).  Section 1681s-2 requires furnishers of credit, like Cenlar, to provide accurate information to consumer reporting agencies.  The Ninth Circuit has not defined the scope of FCRA preemption.[4]

Courts reason that a breach of contract claim is not preempted by Section 1681t(b)(1)(F) because that "provision prohibits only legal duties 'imposed under the laws of any

---

[4] In Gorman v. Wolpoff v. Abramson, LLP., 584 F.3d 1147, 1165-67 (9th Cir. 2009), the Ninth Circuit detailed the debate over the scope of preemption pursuant to the FCRA, noting that some courts find the FCRA only preempts state statutory claims rather than state statutory and common law claims.  However, the Ninth Circuit did not opine on this issue because that case did not require a decision on it.

9

1  State,' whereas requirements voluntarily assumed by contract are
2  not imposed under state law." Rex v. Chase Home Fin. LLC, 905 F.
3  Supp. 2d 1111, 1152 (C.D. Cal. Nov. 19, 2012) (collecting cases)
4  (quotations omitted); cf. Cipollone v. Ligget Grp., Inc., 505
5  U.S. 504, 515, 525-26, 526 n.24 (1992) (holding that the
6  preemption provision in 15 U.S.C. § 1334(b) stating that "no
7  requirement or prohibition . . . shall be imposed under state law
8  with respect to advertising and promotion of any cigarettes
9  . . ." did not preempt a claim for breach of express warranty
10 because such claim is "imposed by the warrantor" and "common
11 understanding dictates that a contractual requirement, although
12 only enforceable under state law, is not 'imposed' by the State,
13 but rather is 'imposed' by the contracting party upon itself").
14         Here, because Cenlar allegedly imposed upon itself the
15 requirement that it would stop inaccurately reporting negative
16 credit, the requirement was not imposed by state law.  (FAC ¶
17 22.)  Accordingly, plaintiffs' remaining breach of contract claim
18 is not preempted by the FCRA.
19    E.    Punitive Damages
20         Cenlar moves to dismiss plaintiffs' request for
21 punitive damages alongside their negligence and negligent
22 misrepresentation claims.  As discussed above, those claims will
23 be dismissed, and therefore, Cenlar's motion as to punitive
24 damages is moot.
25 IV. Cenlar's Motion to Strike
26         Cenlar's motion to strike seeks to strike paragraphs of
27 the FAC which are "improper argument and legal citations."
28 (Cenlar's Mot. to Strike at 1.)  Rule 12(f) authorizes the court

10

to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Because motions to strike are "often used as delaying tactics," they are "generally disfavored" and are rarely granted in the absence of prejudice to the moving party. Rosales v. Citibank, FSB, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).

To the extent that Cenlar's motion seeks to strike paragraphs contained in the claims for negligence and negligent misrepresentation, the motion is moot given the dismissal of those claims. In regard to the remaining paragraphs Cenlar moves to strike, Cenlar has not demonstrated any prejudice. See New York City Emp. Ret. Sys. v. Berry, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. Sept. 24, 2009) ("Where the moving party cannot adequately demonstrate . . . prejudice, courts frequently deny motions to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f)." (citation and quotations omitted)). Accordingly, the court will deny Cenlar's motion to strike. In so doing, the court expresses no opinion about the merits of any legal conclusions plaintiffs include in their FAC.

IT IS THEREFORE ORDERED that:

(1) Defendant Citibank's motion to dismiss (Docket No. 16) be, and the same hereby is, GRANTED;

(2) Defendant Cenlar's motion to dismiss (Docket No. 17) be, and the same hereby is, GRANTED with respect to plaintiffs' negligence and negligent misrepresentation claims, and DENIED as to plaintiff's breach of contract claim; and

(3) Defendant Cenlar's motion to strike (Docket No.

19) be, and the same hereby is, DENIED.

Plaintiffs have twenty days from the date of this Order to file a second amended complaint, if they can do so consistent with this Order.

Dated: April 25, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE