UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| THOMAS M. HOGAN and RU HOGAN,<br><br>   Plaintiffs,<br><br>   v.<br><br>CENTRAL LOAN ADMINISTRATION dba CENLAR FSB; CITIBANK, N.A.; and DOES 1 through 20, inclusive,<br><br>   Defendants. | No. 2:22-CV-00039 WBS AC<br><br>MEMORANDUM AND ORDER RE: DEFENDANT CITIBANK'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT |

----oo0oo----

Defendant Citibank, N.A. ("Citibank") moves to dismiss (Docket No. 40) plaintiffs' second amended complaint (("SAC") Docket No. 35) which alleges breach of contract against both defendants.

I.  Factual and Procedural Background

The factual background of this case is described in detail in the court's April 26, 2022 Order (Docket No. 32) granting Citibank's motion to dismiss, and granting in part and denying in part Central Loan Administration dba Cenlar FSB's

1

1  ("Cenlar") motions to dismiss and strike (Docket Nos. 16, 17,
2  19).  In short, on September 22, 2019 plaintiffs met with a
3  Citibank representative, Gabriella Peter, at a Sacramento branch
4  of Citibank to fix their bi-monthly mortgage payment schedule as
5  Cenlar was rejecting the second payments of each month.  (SAC ¶¶
6  14-17.)  During this meeting, Peter assisted with contacting a
7  Cenlar representative.  (Id. ¶ 18.)
8          Plaintiffs allege that during this phone call the
9  following agreement was made:

> "A.  [Citibank] and [Cenlar] agreed to recharacterize all past payments incorrectly applied to principal and apply them to payments on the loan, to remove all negative credit reporting and waive late fees.
>
> B. Plaintiffs agreed to immediately pay in excess of $4,400 for rejected payments along with a "telephone convenience fee" to bring the account up to date.
>
> C. With the application of payments applied to principal now reset as payments on the loan, Plaintiff[s'] account would be paid current through January 2022"

19 (Id.)
20          Plaintiffs allege that defendants continue to misapply
21 payments, "report negative credit[,] threaten other legal actions
22 against [p]laintiffs," and "engage[] in ongoing and constant
23 harassment of plaintiffs."  (Id. ¶¶ 31-32.)
24 II.  Discussion
25          The court previously granted Citibank's motion to
26 dismiss because the First Amended Complaint, (("FAC") (Docket No.
27 12)), did not plausibly allege that "Citibank was a party to the
28 alleged September 22, 2019 agreement, was aware of it, or made

                                2

1   any representations during the call." (See April 26, 2022 Order
2   at 4.)  That is no longer true.  The SAC plausibly alleges that
3   Citibank is a party to the contract formed on September 22, 2019
4   because it states that Peter advised plaintiffs that she was
5   "authorized to broker an agreement on behalf of Citibank as a
6   lender." (SAC ¶ 23.)  The SAC also alleges that Citibank
7   ratified the specifics of how Cenlar was to recharacterize the
8   payments and Peter stated that Citibank "agreed, as a lender, to
9   the terms of the" agreement.  (Id. ¶¶ 24, 26.)
10          The SAC sufficiently alleges facts supporting each
11  element of a contract claim under California law against both
12  defendants.  See First Com. Mortg. Co. v. Reece, 89 Cal. App. 4th
13  731, 745 (2d Dist. 2001) (listing elements for breach of contract
14  claim: "existence of the contract, performance by the plaintiff
15  or excuse for nonperformance, breach by the defendant and
16  damages").
17          The SAC alleges that the September 22, 2019 agreement
18  constitutes a contract between Citibank, Cenlar, and plaintiffs
19  in which plaintiffs would pay $4,400 and reset their payment
20  schedule, and in exchange defendants would recharacterize past
21  payments, waive late fees, and remove negative credit reporting.
22  (SAC ¶¶ 25-26.)  Citibank argues the agreement lacks
23  consideration.  (Citibank's Mot. at 9.)  The court disagrees.
24  The SAC sufficiently alleges consideration because plaintiffs
25  agreed to pay $4,400 on September 22, 2019, which was not a
26  scheduled payment due on that date pursuant to the original
27  mortgage agreement, and reset their account to pay $2,500 each
28  month, "which was more than the minimum mortgage payment." (SAC

3

1  ¶ 20.)

2　　　　　The SAC alleges that plaintiffs performed pursuant to
3  the terms of the agreement by making the necessary payments and
4  resetting their payment schedule.  (Id. ¶ 30.)  The SAC also
5  sufficiently pleads that defendants breached the agreement
6  because they "continue to misapply payments," "report negative
7  credit," "threaten other legal actions," and "engage[] in ongoing
8  and constant harassment of plaintiffs."  (Id. ¶¶ 31-32.)  The SAC
9  also pleads resulting harm by alleging plaintiffs were denied
10 another loan due to the negative credit reporting.  (Id. ¶ 33.)

11　　　　　Citibank argues that the oral agreement on September
12 22, 2019 falls within the statute of frauds, and is therefore
13 unenforceable.  However, as the court determined in its previous
14 order, the FAC alleged, and the SAC also now alleges, sufficient
15 facts to support plaintiffs' claim that Citibank is estopped from
16 asserting the statute of frauds as a defense if it applies.
17 "Where assertion of the statue of frauds would cause
18 unconscionable injury, part performance allows specific
19 enforcement of a contract that lacks the requisite writing."  In
20 Re Marriage of Benson, 36 Cal. 4th 1096, 1108 (2005).

21　　　　　As discussed in detail in the court's previous order
22 (Docket No. 32), plaintiffs sufficiently plead part performance
23 and unconscionable injury.  Plaintiffs paid the agreed upon
24 $4,400 and changed their payment schedule, but defendants are
25 still misapplying payments and making negative credit reports --
26 leading to denial of another loan plaintiffs applied for.  (Id.
27 ¶¶ 30-33.)

28　　　　　Citibank also argues that plaintiffs' breach of

4

contract claim is preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, to the extent it is based on the alleged wrongful furnishing or reporting of credit information. (Citibank's Mot. at 13.)  As the court previously reasoned, the FCRA does not preempt plaintiffs' breach of contract claim because Citibank allegedly imposed upon itself the requirement to stop inaccurately reporting negative credit, and the FCRA prohibits only legal duties "imposed under the laws of any state."  See 15 U.S.C. § 1681t(b)(1)(F); (April 26, 2022 Order at 9-10).

IT IS THEREFORE ORDERED that Citibank's motion to dismiss (Docket No. 40) be, and the same hereby is, DENIED.

Dated:  July 26, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE